Case number 14-3095 Diane Tungette v. Sun Life and Health Insurance, et al. Argument not to exceed 15 minutes per side. Mr. Anderson, you may proceed for the appellate. Good morning, Your Honors. Good morning. May it please the Court that my name is Matthew Anderson from the Law Firm of Liberty Law Building in Columbus, Ohio, arguing on behalf of the appellant, Diane Tungette, sitting with me at the council table is my associate, Pam Sullivan-Shaw. Your Honors, this is an ERISA case involving a life insurance policy provided as an employment benefit to Mr. Dell Tungette. Preliminarily, Your Honors, let me advise the Court that this is a case of first impression in this circuit. This issue concerning a conversion period and the extension of a conversion period due to a notice provision has never been decided by this Court. Specifically, there are only a handful of federal courts nationwide, only one appellate for the circuit that addressed this issue. A number of state courts have previously addressed the conversion issue today. What is at issue is the application and interpretation of a specific section of the policy providing for a continued coverage for a limited period in the event that the insurance employment is terminated. What that means specifically is that as being part of an employer-provided insurance policy upon termination of employment, insurance ceases to exist. There is no more coverage. Are you construing the terms of this contract pursuant to Ohio law or is it somehow federal law? Your Honor, the terms of the policy are construed in accordance with federal common law applying to ERISA, which I remind the Court that in construing federal common law, the Court can look to state contract principles of interpretation, which ERISA courts do in construing. So I would assert that there is that state law contract construction that is appropriate here. And taking off from that answer to that question, when the issue is more of contract construction as opposed to inferences from the facts of the administrative record, what's the impact of the deference to be given to the plan administrator? Your Honor, in this case, the plan does give the plan administrator some length of the insurance company discretion to determine eligibility, benefit eligibility. So in that case, Your Honor, there is a level of deference, which is the arbitrary and capricious standard of review, which means that the interpretation must be rational in light of the plan provisions, must be supported by a reasoned interpretation, and also must be supported by a deliberate principled reasoning process. In this case, Your Honor, I'm prepared to show why the policy language at issue here, it must, again following up Judge Rosenthal, is that it must, the plan language must be construed, that the meaning of the language must be construed as it would be by an ordinary person. It's my client's position that the plan language at issue here, part six, when your options, when life insurance ends, that's the section that's at issue here. And before you dive into the contract language itself, which I'd urge you to do, in looking at the level of deference to be afforded, what's the impact of the fact that this is a legal issue, the contract interpretation, on your argument that the conflict of interest ought to, to some degree, the question is how much, affect the balance on the scale? So I'm correct, Your Honor, and my client's position is that the, I think if you look at the entire part six, that section informs the court as to whether benefits are payable in this situation. My client's position is that the terms in that provision, when red, red collectively, red is an integrated whole, are unambiguous, which is a legal issue for the court. Now, the conflict of interest, Your Honor, is something that courts give different weight to, and at first glance, the court may suggest that in a $95,000 life insurance case, some life certainly isn't going to break the bank paying a $95,000 insurance claim, but you also have to realize that they do thousands of claims every week, every month, and by opening up the floodgates of a more deference, or I should say, more leniency to the insured, some life has a balance there where it must decide necessarily where to drop the line in terms of its plan interpretation. It certainly doesn't want to open the floodgates of litigation if it both approves and also it is the ultimate payor, because a lot of ERISA plans do have a separate, distinct plan administrator who decides the claims, and the actual plan, the employer itself, funds the claims. Does it increase the burden on the insurer in terms of the showing it has to make that it has a reason, a well-reasoned, rational interpretation? Your Honor, I would suggest that it does increase the burden because the Supreme Court, that's a good question, and it's not – it's more of a fluid concept, Your Honor. The Supreme Court noted that there are higher-than-marketplace standards on insurance companies. What that is, there's no break-line standard, and it is a little bit more of a subjective standard for this court to take under advisory. And I guess I'm having trouble figuring out how that works out in a – it's not a review of a factual determination. It's a review of a legal interpretation, and I'm having sort of a struggle figuring out how you increase the burden of showing a rational interpretation as opposed to the words of the contract, as opposed to – Your Honor, I would respectfully push back to the court and advise that at the end of the day, while the conflict of interest is something that should be considered by the courts, respectfully, I personally don't think it matters. That's where I'm trying to figure out. Fairly. I don't think it matters here because I think the plain language is – I'd like to – Let me ask you about the language then. Certainly. I think I probably – where I am at this point is I probably think you might have a better interpretation, but I'm not sure that a competing interpretation is rational, arbitrary, or reasonable. Because, I mean, one way to look at this is that they're saying, hey, there's a grace period. You don't have to do anything. No more premiums, no reforms, no nothing. There's this grace period where you automatically get it, and the only condition is that the person dies during that period. And the extension is true. It gets extended out if you don't provide notice. But what seems odd about calling back a similar grace period, based on poor company, is that you're now getting this whole ensemble with no more premiums. And that seems a little – that seems very different to me. It seems not unusual at all to say, for 31 days, we don't care about premiums. That's part of having worked at the company all this time. In fact, maybe the month before you left, you effectively paid the premium for this extra month. What seems a little strange about giving you this automatic right for the whole 90 days, is you're obviously not getting premiums for that. And it's kind of like a COBRA thing. And COBRA, of course, you have to pay premiums for. So why isn't that a reasonable way to think about it, or at least sufficiently reasonable not to violate arbitrary increases? That's a good question, Your Honor. And I would agree with the court, obviously, that two alternative interpretations does not necessarily rise to the level of arbitrary increases. On the other hand, with respect to the plaintiff-administrator, notice is in there for a reason. If the entire policy is bent on this conversion privilege, Your Honor, it's bent on that grace period. But the plaintiff-administrator didn't notice because they want to start getting premiums. The longer they wait, the more effectively that person is getting coverage, and they're only going to be able to correct the premiums for the last month or so. So, I mean, I have a short understanding of disincentives. They're in the business of selling the product, which is about risk. And if there was something in the record that showed the individual's retirement, it was about the doc. That was my next question. There's nothing in the record that suggests that didn't happen. Right. So we're just saying we don't know really about a doc. So, again, I'm just not sure I understand why they hurt themselves at this point in time. They hurt themselves, generally speaking, but on the off chance, and it does happen, and which is why there's not a plethora of federal cases addressing the conversion period because how often, aside from the case of retirement in advance of a sickness or whatnot, it doesn't happen in an unexpected gathering. So it doesn't happen often. But on the off chance it happens, Your Honor, then the notice, they do have incentive to provide notice. Yes, I agree. But if they do not provide notice, they also – And I see notice as the point I'm making. There already is a penalty. I think your suggestion is without adopting an interpretation, there's no penalty for no notice. I'm saying no, there is already a penalty because every time they forget to give notice, they're not giving a plethora of notice for this covert-like extension of language. Just tell me I'm missing something. Maybe I am. Well, Your Honor, but I think you're looking at it in a more – from more of a practical principle standpoint as opposed to what does the language tell us. The language tells us that the purpose of this conversion process is so there's no lapse in coverage. And the insurer is entitled to notice. So that way the insurer can understand that instead of reapplying for an individual policy, the same policy continues. All the insurer needs to do is submit an application and the first premium payment. Tell me this. I'm sure you agree that within the conversion period as it applies, 31 days, no premiums, nothing needs to be paid. That's the bottom line. Do you agree with that? Yes, Your Honor. Okay. So what happens – normally I assume someone dies within 90 days and notices properly if they do pay premiums for those final 60 days. Is that right? Yes. Okay. So in other words, they do it the right way. Fifteen days. It was 15 days. Exactly. But if they do it the right way, premiums are paid during that 60-day extension. What's your interpretation of what happens in this case? Is it your view that you collect what they get to subtract the premiums that otherwise would be paid? Or do you think no? No, no, no, no. It's just like the 31-day period. No premiums ever. What's the right answer? So in other words, I know you want to collect the full amount. Are you agreeing it's the amount you would get if the individual died in 31 days? If you say it's what the individual would have collected in 31 days minus the premiums, they would have had to pay to keep everything going 60 days longer. What's the answer to that? There's no subtraction of premiums. It's an extension of the grace period. Okay. Well, that seems a little odd to me. That's where it starts to break down. But, Your Honor, we're talking about— Because the 60-day period normally goes with premiums. That's the norm we're trying to recreate. But we're also—we're also—think about the statutory intent. The intent of Congress in enacting ERISA is to provide a uniform, consistent application and interpretation of the benefits in accordance with the plan documents. And ERISA was intended to benefit the beneficiaries, the plan participants. And at the end of the day, if you look at the policy language, Your Honor, aside from the fact that the—whether premiums were paid, I mean, premiums, you know, we're talking about a 60-day grace period here, which in the grand scheme of things isn't—isn't that much time. I mean, what are the odds? I mean, this—you know, unfortunately, Mr. Tonguette passed away on the 85th day. He had six days left to confer the policy. But under Sun Life's interpretation, which is why I suggest it's irrational, not reasoned, is that we're talking about a coverage of 31 days, automatic coverage. I think the Court would agree, plan language, 31 days, there's automatic coverage no matter what, So under Sun Life's interpretation, and respectfully, Your Honor, with respect to your line of questioning, so coverage automatically ceases, stops after that 31 days. Now let's apply the notice provision. So I think we all agree, Sun Life concedes that Mr. Tonguette had 91 days to confer the policy. So he had a full 91 days to submit an application and to make payment of premiums. First 31 days was coverage. So based on Sun Life's interpretation, now we have a situation where coverage stops after 31 days, which was a lapse in coverage, and let's assume that Mr. Tonguette is still living, refers back to the policy or obtains a copy of the policy, applies for a conversion policy on the 91st day. Now coverage is reactivated, so you've got this 59-day, 60-day lapse in coverage here. That's not what this policy intended. That's not what the terms of the policy said. It must be interpreted. It cannot be interpreted in isolation. I referred this court to the Anheuser-Busch case in July. Specifically an issue there was a phrase, involuntary terminating, and whether that meant that an employee was lost the job completely or just involuntarily terminated from that company based upon a change in control of ownership. And this court specifically stated that that phrase cannot be— I think the light's been shining for a little bit. Oh, I'm sorry. No, but mainly because I want to make sure you get your full rebuttal. But I have one question for you to think about. And I'm just trying to go through this policy and make heads or tails of it. I did notice this one provision. It's under Part 12, AR 22, and it's under proofs of claims. So I'm just wondering if you can look at this while the front and the other side is arguing and just tell me why this doesn't apply. But it seems to say that in all events, all proofs of claims, forget anything else, have to be submitted—well, it actually says 90 days is the norm, but then it says the excuse can be as late as a year after the event, which would obviously be the death. My understanding is this was submitted seven months after a year, in other words, 19 months after the death. So just look at it on what way—I'm just curious if it applies or why it doesn't apply or whether it hasn't been married on. Okay, great. Thank you. Ms. Hurston. Good morning, Councillors. My name is Edna Hurston. I'm with the law firm of Wilson-Elser in Chicago, and I represent the Eppley Sun Life and Health Insurance Company in this matter. Most of the issues which we see in this case have already been discussed. During the presentation with my esteemed colleague, we believe that this is a case of policy interpretation, just like the panel does. Is it fair to say that the question before us is whether, in the death within the conversion period provision, whether the reference—the language that we're interpreting during the 31-day period, et cetera, whether this language refers, in fact, to just 31 days, the 31 days that follow, I guess, the—would it be the termination? Yeah, the termination of coverage. On the one hand, or on the other hand, whether that refers to the conversion period in general. Yes, that's exactly the question here. And I guess the question I have for you there is— I mean, this doesn't quite say what sometimes I think your brief— I'm not suggesting anything, but your brief paraphrases it to say. What it says is, claim may be made for a death benefit if you die during the 31-day period during which your insurance may be converted to an individual policy. And the question I have for you there is—and this is going to be sort of dramatic, but the word gosh is a definite article here. And it's referring to a single 31-day period. And so now the question before us is, well, which 31-day period are we talking about? One answer could be the same answer that the Notice of Conversion Privilege provision, which immediately follows it, gives, which is the 31-day period following termination of coverage. That's the interpretation you're advocating. That's correct. That's actually stated in this other provision. Correct. Here, it's saying the 31-day period during which your insurance may be converted to an individual policy. And the concern I have with your position is that in a case where notice is not given, and I think it's common ground in this case that the conversion period is extended to 90 days or 90 more, in such cases, there is not a single 31-day period during which the insurance can be converted. There actually might be, I think, 59 31-day periods within the 90-day period that the person could convert. And so the reference here in the definite article to the 31-day period during which the insurance could be converted, in a case of extension, why isn't that grammatical nonsense if we're going to read it to refer only to a single 31-day period where the person can convert? I understand your question. I appreciate you hanging with me on that. Not a problem. My position would be that the policy in and of itself only talks about one 31-day period. I understand that in the case of an extension, the add-on of a max of 60 additional days, they could arguably be a lot of other 31-day periods. But the policy in the way it is written provisions that one 31-day period, and I would agree with Your Honor, I just sat on the question of the grace period, the 31-day grace period after the termination of coverage. That's the one period during which coverage is continued in case of a death. Well, I'm sorry, please go ahead. Essentially, to follow up to your question, if we have this grammatical problem created by the way the sentence is crafted and the references you've given to the other policy sections, is one result to find an ambiguity? And what's the impact if that result is true? An ambiguity I would define as two reasonable interpretations, one being the one that there are a number of 31 periods during a 91-day period, and my interpretation, which is there's only one 31-day period, which is the one that the policy, in my opinion, envisions. Then my client nonetheless would succeed in this case, given the fact that under an arbitrary and capricious standard of review, a reasonable interpretation is all that it takes. If standard principles of contract construction apply, one of them is that an ambiguity can result in construing the language against the ground. That is correct. And how does A, does that apply here, and B, how does that affect the outcome of the arbitrary and capricious? The contra-proparentum theory that Ron Lewis referenced would not apply in an arbitrary and capricious context, given the fact that it is based on the idea that in a reasonableness scenario in the world, nonetheless, a reasonable interpretation by my client, the claims administrator, would be discarded, which clearly runs afoul of the idea that reasonableness is all that we need. And there's actually a Fourth Circuit case on point, currently at NUM, which discussed this very issue of the contra-proparentum theory in the context of an arbitrary and capricious case, and it rejects it because it simply doesn't make sense. Well, if we were to say, okay, this reference to a 31-day period, et cetera, is ambiguous, I'm not so sure it is, but if we do say that, I'm not sure that we then just jump to the conclusion that it's up to the administrator to do what they want, because we do have this heading, right? And my recollection of these things is that headings can clarify an ambiguity. And again, going back to the question presented in the case, which is, is this a reference to just 31 days following termination, or is there a sentiment for a conversion period? The heading says death within the conversion period. Why doesn't that resolve the ambiguity in favor of the latter reading, that it is a sentiment for a conversion period? I would say that the 31-day period after the termination is the conversion period. But not in a case, I mean, surely you would agree that in a case where no notice is given, the conversion period, the period in which the insurance can be converted, is in fact, in this case, 90 days, 90 months. I would call it the extended conversion period. Well, I mean, is that term anywhere in here? The term in and of itself is not the notice provision simply refers to the possibility of an extension. The term conversion period in and of itself is not defined, unlike in some other policies. Right. In our case, it's not. Well, you know, there's another sort of interesting forensic detail in this provision here, which is immediately after the language of interpretation, the 31-day period during which you can converge to an individual policy. There's a parenthetical that says, see conversion privilege. So then we go back to the first provision in Part 6, which says, you know, within 31 days after the termination, you must apply. But then that's modified by the notice of conversion privilege section. I think this is common ground, where if there's no notice, then you can get up to an additional 60 days, which modifies what is said in conversion privilege. Why doesn't this reference to see conversion privilege, I would say, as modified by the notice of conversion privilege provision, why doesn't that reinforce the idea that in an extension case, it's not 31 days, it's 90 days? I understand that it's a misdemeanor argument. I would say because the F within the conversion period only incorporates the conversion privilege provision. It specifically does not incorporate the notice of conversion privilege provision. But that is, I mean, patently modified, right, by the notice of conversion privilege. I don't want to bog you down. Can I ask you, I mean, this is a, I think this cuts against the point that I was making, but it might not. I'm just trying to figure it out. So the depth within the conversion period, and the whole point is, or the whole case, is whether we take the notice of conversion privilege and we kind of pull it back in, right? That's the whole debate. That's the idea, yes. So that's the whole debate. And what I'm trying to figure out, and this is a little bit like what I was asking the client on the other side. So under the depth of the conversion period, one and two, I'm not sure, cut one way or another, telling us what to do with this next section. But what about three? I mean, the conversion policy is an issue. It must be given back to the insurer. And no claim can be under that if we're trying to prove it's paid. So I guess that seems a little odder to me to apply on someone who converts in day 70. But I don't know. I mean, you're the expert here. In other words, I think one, two, three, under depth of the conversion period, make perfect sense. It's just a great thing. They just make perfect sense. You give it back. You pay what you need. You don't have to. But I'm not so sure three in particular makes as much sense when we're pulling in for the last 60 days. That seems a lot to me because why would a company say you get it for 90 days, you don't even have to pay premiums. We don't even care if you convert it. Your Honor, I mean the 31 days is what the 31 days is. And that's how much the risk is being resumed. But Judge Kavanaugh just said that you can really read particularly that first sentence or even the capital, the heading. It's just subsuming it with a parenthetical. What does the number three mean? I mean I don't understand. You're obviously an expert on this policy. I don't understand what it means, the number three. To give the insurance policy back to – It says if a conversion policy has been issued, this is all passive tax. It must be given back to the insurer. No claim can be made under it or other than the return of the previous paycheck. Passive every single place. I just don't understand what that means. I don't have any, you know, hidden agenda. It's English, but I don't understand it. I'm not entirely sure. You don't know what it means? It doesn't apply to the case itself. No, no. Tell me why I'm wrong about this. I thought what it was saying is within the 31 days, let's say you get notice or you don't even need notice. You're very responsible. You quickly convert. You start paying – you convert, and when you convert, they say, okay, this is what's due. And what this is saying is if you die within the 31 days, you get your premium back. Yes. Yes, he says. That's exactly what he means. That's what he means. My whole point or my whole question is does that make sense for the next 60-day, 81-day period? And we've never stated under COBRA, and I'm really asking this for a patent, but wouldn't COBRA say you got your extension now, but you get to exercise the benefit during the 60-day period? You can return the premiums. That seems weird to me. That's what he's doing with the 31 days. We have no intention of issuing coverage for a period of 90 days without – What do you mean with the conflict of interest point, which is – Well, can I ask a question? Just to follow up on that point real quick. With regard to the idea that, whoa, under the other side's interpretation, they would have to pay premiums, I guess, for 90 days, why isn't that just saying, okay, well, the penalty for not giving notice is just a little heavier than extending the period? It's just that you're also going to lose a couple premium payments. So get the notice out. Why isn't that sort of a common-sense story? Two responses to that. The first one is that primarily it is not our duty to provide notice. We're not the plan administrator, even though my esteemed colleague has said that several times during his argument. We're the claims administrator. Only the claims fiduciary. We don't have discretion. You guys didn't like the claims and the whoever. The plan administrator can fight that one out. It's right. The plan administrator was obviously in this lawsuit at some point. Now there's an empty chair. But the plan administrator was certainly here, and it was certainly the plan administrator's responsibility to administer the claim and to keep and maintain the enrollment information, to collect the enrollment information. It's not something my client does. My client just fiduciaries the policy. You had a second point? Yes, I did. And I currently forgot it. I'm sorry. Okay. I mean, I was just saying, you know, why isn't it just a bigger penalty for not getting notice? But I'm sorry, Jeff. I don't know. No. Crowd your time. No, no. No. He had a question. What's your answer to the arbitrary completion? And the conflict of interest. It's so vague and potentially helpful. I don't know what to do with this conflict of interest point. I get the intuition behind it that, oh, shoot, why are we favoring getting deference to the very person whose pocket the money would come? So that hurts you, it seems to me, because arbitrary completion by itself is better than arbitrary completion by something. Right. I would agree. However, the conflict of interest is not asserting the same type of weight in every single case that might be before the panel. Meaning in cases where there's evidence that a conflict of interest tainted the decision of some type or another, the conflict of interest rises to a higher weight and as a result of that should be considered more. In a case like this, however, where it's just simply contract interpretation, where it's the question of whether somebody read the terms as they were actually written. And there is no other evidence that my client purposefully was out to get Mr. Nguyen one way or the other or purposefully without notice just to sit there and hope that Mr. Nguyen was going to pass, which is certainly not the case. You said earlier, I just want to make sure I understood, you couldn't give notice.  We truly do not have knowledge of who's enrolled, who's covered, what the benefit amount is until these people die. And that's how most of these group life plans are. They're self-administered by the administrator. They enroll their employees. They keep the enrollment records. And the insurance companies basically get a lump sum premium each month. They don't know how it's calculated. I see the red lights on. Yes. Thank you for answering all of our questions. We appreciate it. I try. Thank you. Thank you, Your Honor. Well, what's first in my mind, real quick, the notice, I mean, the policy places on some length the obligation to notice, so to say, that they don't know how to notice. Maybe they should communicate better with the client. I think there's a pretty serious dichotomy in this area between plan administrators and claim administrators. And the plan administrator typically is the employer. The employer is the one that gives you the notice, tells you everything you can do, implements all the policies. I mean, it's a sum of their point, isn't it, that the main person obligated to notice is the one who knows someone's leaving the company. I mean, somebody doesn't know someone's leaving the company because they're not an employer. That's true. That's a fair point, Your Honor. I don't know that the employer is in the best position to give notice. At the same time, respectfully, the policy says what it says. And it does provide that some length before you notice does have an obligation, either some length or the employer. And I don't think that some length can use that as a shield to suggest that, well, the notice should be haphazardly applied because we didn't know where the – I'm not – I don't think they're saying that they don't get out from under the consequences of blocking notice. I think the point relates to the incentives. It's a response to your incentives and concern. The consequences. Right? That's like all that's going on. It is, Your Honor. And I want to – I mean, there's a lot of talk about the incentives of some life and whether or not the notice provision is a penalty. Your Honor, respectfully, I think we need to focus the court's attention more on the fact that the provision is there to benefit the insured. That's – well, it could be construed as a penalty for some length. I mean, here are the consequences of not providing notice. Well, I mean, the provision strikes a balance. It does. Some people say, oh, the purpose of the statute is thus and so, and therefore, you have to do whatever it takes to get there. I mean, these things, they strike a balance. And the question is, you know, where does this language strike the balance, not just who is it supposed to benefit? It's supposed to benefit them, but only so much. And the question is, are we beyond the so-much zone? To an extent, Your Honor, and I do think the fact that the policy in providing a 31-day grace period, you know, the bottom line here is that that – and give an option to continue life insurance, you know, for at least 31 days subject to the notice provision. So I do think that without question, I mean, while there could be some balance, I think the balance is – especially the purpose and enactment of risk – I think the balance without question weighs a lot more heavily in favor of the insured because it's their benefit under the plan. They are the beneficiary or the, you know, plan participant. I've got only a few seconds left. Just part 12 of the policy. It's in the administrative record. My client pursued initial investigation as early as one month after her husband's death, asked the employer, the main, I think, HR – Tony Belcher is the main HR rep – asked whether there was any coverage still in force. Emphatically in an email, I think it's Exhibit D in one of her affidavits in the record. It did say there's no coverage. That counts as a proof of claim? That second one? An email counts as a proof of claim? Not necessarily a proof of claim, but I would say, Your Honor, that the insurer is a stop from – and, you know, there's plenty of case law that this stops an insurance company from benefiting from a representation based upon coverage. And I understand that the employer settled for the insurance company. My time's up. You're saying there's a response to the email that said, okay, we're going to look into this kind of thing? No, he said there was no coverage. Flat out that there is no coverage. Okay. So, tell me how that works. Maybe I'm missing something. You're never allowed to say that. They still think that. Well, for one – Is there still a rule that says filing a proof of claim would end, you know, no later than a year after the death? Well, I mean, there's a two-fold there. I mean, for one, there's no notice. My client doesn't even have a copy of the policy. Again, a notice issue. But that being said, she's attempting to gain a copy of the policy, asking the employer, asking the HR administrator, and the administrator, point blank, he says there is no coverage. Okay. Maybe the basic point is the record is not sufficient to deal with this issue. And can I just ask one final question on that? Yeah. Has Sunlight denied coverage based on untimely proof of claim? Your Honor, no. They have not. They have not. Thank you, Your Honor. All right. Thanks to both of you. Just a silly little policy. We're spending a lot of time on this, but I know it matters a lot to your clients, so it's worth it. Thank you to both of you for your helpful briefs and argument. The case will be submitted, and I think I'll call the last case. Thank you.